COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

MERCEDES ESCAMILLA,                                 )

                                                                              )              
No.  08-03-00193-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )         
168th Impact District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20020D02196)

                                                                              )

 

 

O
P I N I O N

 

Appellant,
Mercedes Escamilla appeals from a conviction for possession with intent to
distribute a controlled substance.  After
finding her guilty, the jury assessed a punishment of 9 years= confinement and imposed a $5,000
fine.  Appellant raises three issues on
appeal.  Appellant first contends that
the trial court abused its discretion in denying her motion for mistrial.  Secondly, Appellant challenges the accuracy
of the translation and the competency of the court-appointed interpreter.  Finally, in her third issue, Appellant
alleges error in the jury charge.   We
affirm.








Detective Luis
Serrano, of the El Paso Police Department Narcotics Section, received a tip
that the house at 11758 Prado Del Sol was being used as a stash house.  After conducting surveillance on the home for
about a month, Detective Serrano determined that no one lived in the
house.  On April 25, 2002, Detective
Serrano saw a yellow truck backed up into the driveway of the home; the bed of
the truck inside the garage, with the garage door partially down.  Detective Serrano then witnessed two men exit
the house, close the garage door, and drive away in the truck.  Using his radio, he requested for the truck
to be followed and for a K-9 unit to assist in the event that the truck was
stopped.  

Continuing to
watch the house, Detective Serrano saw a male and a female, later identified as
the Appellant, exit the house and drive away in a small red car.  Detective Serrano proceeded to follow the car
and radioed in to request for a traffic stop to be conducted on the
vehicle.  El Paso Police Officer Carlos
Contreras, a uniformed motorcycle officer, performed the stop.  Once the car was stopped, Detective Serrano
and another detective that had met him there, walked over to where Officer
Contreras had conducted the stop. 
Officer Contreras gave Detective Serrano the names of the driver and the
passenger of the vehicle.  Detective
Serrano then approached the driver, asked him his name, and identified himself
as a police officer and told the driver he was conducting an investigation on
the house located on Prado Del Sol.  He
noticed the driver was extremely nervous and was being evasive in answering the
questions Detective Serrano was asking him; the driver further denied being at
the house in question.  The driver of the
vehicle then gave consent to have the car searched by the K-9 unit.  The search uncovered a black plastic trash
bag which contained individual plastic wrappings that looked and smelled like
cocaine.  When Detective Serrano asked
the driver about the bag, he was very evasive about it.  He then told the driver that he had seen him
leave the house on Prado Del Sol and the driver stated that he had been there
to help a friend get a vehicle started.  








El Paso County
Sheriff=s
Detective Hope Gomez, who was assigned to work with the police department on
the date in question, was also assigned to keep surveillance on the house on
Prado Del Sol.  She testified that she
had also followed the red car until it was pulled over, and at that point, she
met Detective Serrano and walked over to the red car.  She spoke to the Appellant who only spoke
Spanish.  The officer testified that she
explained to Appellant that they were conducting an investigation and that
Appellant was unable to produce any identification.   Appellant was described as nervous and
avoided eye contact with Detective Gomez. 
Appellant told Detective Gomez that her name was Herendia Rojas and
provided her with a false date of birth. 
Appellant=s true
identity was later discovered by INS agents when they processed Appellant=s fingerprints.  When Detective Gomez asked the Appellant
where she was coming from, Appellant could not remember the street name or
address of the home.  Detective Gomez
asked Appellant where she and the driver were going and Appellant was very
evasive and provided conflicting stories; at one point Appellant stated they
were going to visit a friend and then later said they were going to the store.

Once Detective
Serrano gave the order to place both Appellant and the driver under arrest,
Detective Gomez testified that she placed the Appellant under arrest and
provided her with her rights.  She then
searched the Appellant=s
person and in so doing, she discovered a plastic bag above Appellant=s breast containing thirty-four bindles
of cocaine.  The amount was approximately
184 grams which Detective Gomez testified that such amount was not normal for
personal use.  The cocaine was also
packaged in the same manner used for trafficking the drug.  The Appellant was then transported to the
police station.  








Detective Serrano
and Detective Gomez went back to the house on Prado Del Sol where some
detectives had already attempted to make contact at the front door and had
deployed a dog which alerted to the garage area.  This information gave Detective Serrano
probable cause to obtain a search warrant. 
Once the search warrant was secured, they entered the house.  There were no other suspects in the
house.  Once inside, they found very
little furniture throughout the house; they also did not find any clothing,
there were no plates or glasses in the kitchen cabinets, and inside the
refrigerator, the only thing they found was a case of beer.  Detective Gomez testified that in her
experience, the lack of furniture indicates that the house is being used as a
stash house.  Inside the home, they
discovered more cocaine; they found a total of approximately 601 grams, a
digital scale, and car jack, commonly used to press bricks of cocaine, empty
wrappings containing cocaine residue, boxes of sandwich bags, and empty grocery
bags.  Detective Serrano further
testified that in his experience, persons allowed access to a stash house are
usually people that are trusted by the drug traffickers.  








Appellant also
testified on her own behalf at the trial. 
She testified that at the time of trial, she was twenty-two years old, a
citizen of Mexico, and was illegally in the United States.  She testified that she came to the United
States to work and was staying with family. 
She worked cleaning houses.  She
had met Regino Pimental, the driver of the red vehicle, at Romeo=s Nightclub a week before the day of
her arrest.  She testified that she had
seen Mr. Pimental twice that week and had talked to him on the phone.  She had told him what she did for a living
and he asked her to clean the house on Prado Del Sol.  On April 25, 2002, Mr. Pimental drove her to
the house located on Prado Del Sol.  When
they arrived, there was a man and a yellow truck in the garage.  Upon entering the house, she noticed there
were no decorations on the living room walls, no personal items, no pots and
pans in the kitchen, and no food in the refrigerator.  She was unable to locate any cleaning
supplies, but she did find a towel which she used that to wipe the few pieces
of furniture in the house.  She was at
the house for about forty minutes when she and Mr. Pimental left to go to the
store to buy cleaning supplies.  She
testified that on the way to the store, they saw that the police had pulled
over the yellow truck that had been in the garage.  She then noticed that they were being
followed by a police officer in a motorcycle who finally pulled them over.  As they were being pulled over, Mr. Pimental
gave her a transparent bag and told her to hide it, and since her immediate
reaction was fear, she hid the bag in her own person.  She testified that she was afraid because she
is illegally in this country.  She
indicated that she did not know what the bag contained and that she had never
possessed cocaine nor had seen cocaine inside the house.  She stated that she did not give the police
her real name because of her illegal status in this country.  

After hearing all
of the evidence, the jury found Appellant guilty of unlawful possession with
intent to distribute cocaine.  The jury
assessed punishment at nine years=
confinement and a fine of $5,000.  On
March 14, 2003, Appellant filed a motion for new trial that was denied by a
written order that same day.  Appellant
then timely filed a notice to appeal.

Prosecutorial
Misconduct and Motion for Mistrial

In Issue One,
Appellant argues that the actions of the prosecutor during voir dire violated
her rights and prevented her from receiving a fair trial and effective
assistance of counsel.  Appellant argues
that the prosecutor engaged in misconduct during voir dire when the prosecutor
placed her hands in a Acompromising
and biased manner on a prospective juror to obtain favorable answers from that
juror.@  Appellant further agues that the denial of
her request for a motion for mistrial was an abuse of the trial court=s discretion.

 








Standard
of Review 

A trial court=s denial of a mistrial is reviewed
under an abuse of discretion standard.  Ladd
v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999).  The determination of whether a given error
necessitates a mistrial must be made by examining the particular facts of the
case.  Id.  The Texas Court of Criminal Appeals has
recognized that mistrials are an extreme remedy for prejudicial events
occurring during the trial process.  See
Bauder v. State, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996).  Even when a prosecutor intentionally elicits
testimony or produces other evidence before the jury which is excludable at the
defendant=s option,
our law prefers that the trial continue. 
Id.

 In order to preserve error in cases of
prosecutorial misconduct, the defendant must: 
(1) make a timely and specific objection; (2) request an instruction
that the jury disregard the matter improperly placed before the jury; and (3)
move for a mistrial.  Cook v. State,
858 S.W.2d 467, 473 (Tex.Crim.App. 1993); see Tex.R.App.P. 33.1(a). 
Claims of prosecutorial misconduct are determined on a case by case
basis.  Stahl v. State, 749 S.W.2d
826, 830 (Tex.Crim.App. 1988)(Opin. on reh=g).  Prosecutorial misconduct has been found where
(1) the prosecutor=s action
deliberately violated an express court order, and (2) the prosecutor=s misconduct was so blatant as to
border on being contumacious.  Stahl,
749 S.W.2d at 831, citing Landry v. State, 706 S.W.2d 105, 111
(Tex.Crim.App. 1985), cert denied, 479 U.S. 871, 107 S.Ct. 242, 93
L.Ed.2d 167 (1986).








During voir dire,
several jurors presented concerns about the ability to be fair and impartial
jurors.  While conducting the individual
voir dire of Venireperson Elva Boydston, the prosecutor, while asking
questions, placed her hands on Venireperson Boydston=s
person in what Appellant alleged was a sympathetic and comforting manner.  During this time, there were no other panel
members present and they had been instructed not to discuss their individual
voir dire with any of the other panel members. 
After the touching occurred, Appellant=s
counsel made the following objection outside the presence of the Venireperson
Boydston and the other potential jurors:

First off, this is not a personal
attack on Ms. Hill, because I=ve
practiced law with Ms. Hill for quite some time.  But in this instance, I noticed that she was
touching the juror.  Several times she
touched her on the arm, like a reassuring gesture that it was okay, that she=s all right to be that way.

We are not friends in
a court of law, as far as jurors go.  And
I believe -- it may not have been an intentional attempt to sway a venireperson
to answer the way they wanted to, but it may have been -- and I know Ms. Hill=s nature, and she is a very nice
person, so I wouldn=t say it
was intentional, but it was something that was done.  And I=m
going to ask for a mistrial at this time because of the fact that this
venireperson has been poisoned because of the touching of the arm.  

 

The trial court denied Appellant=s motion and instructed that there be
no further touching of the jurors. 
Further, the State=s
attorney indicated that the State would stipulate to no touching.  The trial court additionally granted
Appellant=s
challenge for cause of Venireperson Boydston.








In this particular
instance, we find that the prosecutor=s
behavior did not amount to prosecutorial misconduct.  As was admitted by Appellant=s counsel, the touching of Venireperson
Boydston was not done in an intentional manner. 
The record does not reflect that the prosecutor violated a court order,
nor do we find her behavior in this instance to be Aso
blatant as to border on being contumacious.@  See Stahl, 749 S.W.2d at 831.  Appellant fails to explain how counsel=s actions prejudiced her in any manner
or affected her counsel=s
ability to provide effective assistance at trial.  Furthermore, Appellant=s
objection to this touching was that Venireperson Boydston had become poisoned
as a result of such behavior.  Even if
Appellant=s theory
was correct, Venireperson Boydston did not serve on the jury but rather was
challenged for cause.  Venireperson
Boydston never sat in Appellant=s
jury at trial, preventing the spread of such poisonous affect to the other jury
members and influencing the outcome of Appellant=s
trial.  Moreover, such behavior occurred
outside the presence of the other panel members and all potential jurors were
specifically instructed by the trial judge not to discuss their individual voir
dire with any of the other panel members. 
Under these specific circumstances, we fail to see how counsel=s behavior amounted to prosecutorial
misconduct and how Appellant was prejudiced by such conduct.  We find that the trial court did not abuse
its discretion in denying Appellant=s
motion for mistrial.  We overrule Issue
One.

In Issue Two,
Appellant alleges that she was denied due process and a fair trial due to the
interpreter providing an inaccurate and incorrect translation.  Appellant also challenges the competency of
her court-appointed interpreter.  The
State argues that the accuracy of the translation cannot be reviewed on appeal
because it is a factual question that may only be answered by the jury.

Objections
Complained Of

During the
cross-examination of the Appellant, her counsel made the following objections:

Defense:           Your Honor, I=m
going to object.  I think there=s a problem going on with the
translation, not that the interpreter is not doing her job.  I think it=s
just the form of the question.  The
question is not specific enough, and my client is not -- I don=t think she=s
understanding what is being asked of her. 


 

Prosecutor:       Your Honor, I=ve
asked her two different ways.

 

Defense:           Can we approach?








The
Court:        Well, I think she=s got to tell us that, if she doesn=t understand the question.

 

Prosecutor:       And I=ve
offered two choices.

 

Defense:           Well, is it the length of time as to
the telephone conversation, or is he asking 
-- I mean, I=m
confused.  Is he asking, did they talk on
the phone for two, three, four, five, six hours at a time, or did they talk
multiple times throughout the day?  He=s asking how much did you-all talk
during one conversation or during a day?

 

The
Court:        Well, he said a little or a
lot.

 

Defense:           But, again, is it -- I=m confused as to the question he=s asking.  If I=m
confused, I don=t see how
she could answer it.  Is he asking about
the length of the conversation?

 

The
Court:        Well, she can tell us if she=s confused and then ask him to repeat
the question or rephrase the question.

 

Prosecutor:       Okay.

 

Then there was the following objection:

 

Prosecutor:       Without the translation, Your Honor, you
can tell we=ve had a
lot longer answer than yes or no to my question of at least five times.

I=d just ask you to direct the witness to
answer yes or no to the question of at least five times.

 

Defense:           Judge, he=s
not direct.  If he doesn=t want her to explain, then he shouldn=t ask open-ended questions.  If he is asking for yes or no, then he needs
to ask the question.  And I=m going to object.

 

The
Court:        Just a minute here.

 

Defense:           She speaks Spanish, and she hasn=t even answered, and he=s already objecting.  We don=t
even know the English interpretation.  We
don=t know if our jurors speak Spanish, and
he=s objecting before she even
responds.  

 








Prosecutor:       Your Honor, we can tell she didn=t say yes or no, and I asked, >Did you speak with him at least five
times?=

 

The
Court:        This is the way she should
-- on the questions that can be answered yes or no, you must answer yes or
no.  If you need to add anything to it,
we=ll allow a brief additional answer, but
normally, just answer yes or no, unless it doesn=t
fit, in which case, you can give a little bit more of an answer. 

 

Appellant=s
counsel then objected to the form of the question asked by the prosecutor, and
the trial judge asked the prosecutor to rephrase.  The next objection was as to whether the
question being asked was an actual question or an answer to a question.  Appellant=s
counsel asked for the question to be rephrased; the trial judge did not
respond, but rather the prosecutor rephrased his question.  Then an objection based on speculation was
made.  Then another objection on a
misstatement of the evidence was made, followed by another for misstatement of
the evidence.

As the State
properly points out, Appellant=s
counsel failed to properly preserve the issue for appeal regarding the above
listed objections.  In order to preserve
an issue for appeal, the complaining party must make a specific objection and
obtain a ruling on the objection.  Wilson
v. State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002), citing Broxton v.
State, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995).  The point of error on appeal must comport
with the objection made at trial.  Wilson,
71 S.W.3d at 349, citing Thomas v. State, 723 S.W.2d 696, 700
(Tex.Crim.App. 1986).  With respect to
the objections mentioned above, these were a series of objections made at
trial, none of which were objections regarding the accuracy of the
translations.  Therefore, we find that
Appellant failed to preserve error for appeal based on the above objections,
since no objection was made regarding the accuracy of the translations.








Before this Court
on appeal, there was only one instance where the Appellant complained about the
accuracy of the translation.  The
prosecutor asked the Appellant if she looked through the cupboards and she
answered that she did; he then asked her if she did so Aextensively?@ 
Thereafter, Appellant=s
counsel asked to approach the bench and stated the following: AExtensively and >cuidado=[1]
are not -- that=s not the
correct translation.  That=s a difficult word to translate.@ 
The trial court asked for the question to be rephrased.  The question was rephrased and Appellant=s counsel did not object any further.

Although Appellant=s objection at the hearing comports
with his issue on appeal, the accuracy of translations are not reveiwable on
appeal.  See Garcia v. State, 887
S.W.2d 862, 875 (Tex.Crim.App. 1994), overruled on other grounds by Hammock
v. State, 46 S.W.3d 889 (Tex.Crim.App. 2001).  The accuracy of a translation is a factual
issue to be determined by the trier of fact. 
Id.  We therefore do not
reach the merits of Appellant=s
issue regarding the accuracy of the translations.

Competency
of Interpreter

Included as part
of her Issue Two, Appellant challenges the competency of the interpreter.  Appellant argues that the trial court was
required to make a determination as to the qualifications of the interpreter.

Section 38.30(a)
of the Texas Code of Criminal Procedure provide in pertinent part: 








When a motion for appointment of an
interpreter is filed by any party or on motion of the court, in any criminal
proceeding, it is determined that a person charged or a witness does not
understand and speak the English language, an interpreter must be sworn to
interpret for him.  . . .  In the event that the only available
interpreter is not considered to possess adequate interpreting skills for the
particular situation or the interpreter is not familiar with use of slang, the
person charge or witness may be permitted by the court to nominate another
person to act as intermediary between himself and the appointed interpreter
during the proceedings.

 

See Tex.Code Crim.Proc.Ann. art. 38.30(a)(Vernon 2005).  The trial court=s
determination of competence of an interpreter is subject to a review for abuse
of discretion.  Mendiola v. State,
924 S.W.2d 157, 162 (Tex.App.--Corpus Christi 1995, pet. ref=d, untimely).  A general claim of confusion will not
suffice; where a defendant presents an issue of potential harm without a
specific example of misunderstanding or inability to confront a particular
witness such as by way of objection, voir dire examination, or reexamination of
the witness, he fails to demonstrate any actual injury.  Frescas v. State, 636 S.W.2d 516, 518
(Tex.App.--El Paso 1982, no pet.).  In
such an event, even if there was error in the record, it would be
harmless.  Montoya v. State, 811
S.W.2d 671, 672 (Tex.App.--Corpus Christ 1991, no pet.).








Here, there is no
indication on the record that Appellant=s
counsel requested for the trial court to appoint another translator.  Appellant=s
trial counsel understood Spanish and was able to point out alleged specific
error made by the interpreter. 
Furthermore, we note that a trial court is under no duty to question the
interpreter to determine her qualifications; instead if a question regarding
her qualifications arose, the Appellant should have objected and made a
record.  See Montoya, 811
S.W.2d at 673.  Appellant in her brief
does not direct us to the objections made as to the competency of the
interpreter.  Rather, Appellant includes
conclusory statements[2]
in her brief to support her argument, and in so doing, fails to provide the
Court with a proper record to review her complaint.  Moreover, Appellant did not request to
nominate another person to act as an intermediary between her and the
interpreter.  We find that the trial
court did not abuse its discretion in determining the competency of the
translator.  We therefore overrule Issue
Two.

In Issue Three,
Appellant alleges that the trial court erred in denying her jury charge
requests and that such denial resulted in a denial of her right to due process
and a fair trial.  Appellant requested
for the jury charge to include the definition of actual and constructive
delivery.  Appellant submitted to the
court the following request on how the jury charge should have been worded:

Now if you believe the
State met its burden of proof by presenting sufficient evidence beyond a
reasonable doubt that on or about April 25, 2002 in the County of El Paso, in
the State of Texas, Mercedes Escamilla, the defendant, did intentionally and
knowingly possess with intent to actually /constructively deliver a
controlled substance, to wit:  cocaine,
having an having [sic] and [sic] aggregate weight including adulterants and
dilutants, over 400 grams, as alleged in the indictment, then you will find the
defendant guilty as charge in the indictment and answer verdict form B.  If not, then continue to the next paragraph.

 

However, if you
believe that the State did not meet its burden of proof by not presenting
sufficient evidence to prove beyond a reasonable doubt that on or about April
25, 2002 in the County of El Paso, in the State of Texas, Mercedes Escamilla,
the defendant, did intentionally and knowingly possess with intent to actually/constructively
deliver a controlled substance, to wit: 
cocaine . . . . [Emphasis added].

 

The trial court refused Appellant=s request.  








We review a charge
error utilizing a two‑step process. 
Orona v. State, 52 S.W.3d 242, 249 (Tex.App.‑-El Paso 2001,
no pet.).  We first determine whether
error actually exists in the charge.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(Op. on reh=g); Orona, 52 S.W.3d at
249.  If error exists, we must then
determine whether sufficient harm was caused by the error to warrant
reversal.  Arline v. State, 721
S.W.2d 348, 351 (Tex.Crim.App. 1986).  If
the charge error was the subject of timely objection, reversal is required if
that error was calculated to injure the rights of the defendant thereby causing
Asome harm.@  Ovalle v. State, 13 S.W.3d 774, 786
(Tex.Crim.App. 2000).  If error exists,
we must then assess whether any resulting harm requires reversal.  Almanza, 686 S.W.2d at 171.  The party alleging a charging error bears the
burden of persuading the reviewing court that the erroneous charge resulted in
some actual harm; absent a showing of actual harm, reversal is improper.  Abdnor v. State, 871 S.W.2d 726, 732
(Tex.Crim.App. 1994).

Appellant was
indicted by a grand jury.  Appellant=s indictment read as follows:

The Grand Jurors for
the County of El Paso, State of Texas, duly organized as such, at the April
Term, A.D., 2002 of the 34th Judicial District Court for said
County, upon their oaths in said Court, present that on or about the 25th
day of April, 2002 and anterior to the presentment of this indictment, in the
County of El Paso and State of Texas, MERCEDES ESCAMILLA, hereinafter referred
to as Defendant, did then and there knowingly and intentionally possess with
intent to distribute, a controlled substance, to-wit:  cocaine, having an aggregate weight,
including adulterants or dilutants, of 400 grams or more.

 

The definition section of the jury
charge contained definitions for the words deliver and distribute as defined in
the Tex.Health & Safety Code Ann.
' 481.002(9), (14)(Vernon Supp.
2004-05).  The jury charge submitted to
the jury read as follows:

Now, if you find from
the evidence beyond a reasonable doubt that on or about the 25th day of April,
2002, in El Paso County, Texas, the defendant, MERCEDES ESCAMILLA, did then and
there unlawfully, knowingly or intentionally possess with intent to
distribute a controlled substance listed in Penalty Group 1, to-wit:  Cocaine, having an aggregate weight,
including any adulterants and dilutants, of 400 grams or more, then you will
find the defendant guilty of the offense as charged in the indictment.  (VERDICT FORM B) [Emphasis added].

 








Unless you so find
from the evidence beyond a reasonable doubt, or if you have a reasonable doubt
thereof, you will acquit the defendant of that offense and next consider
whether the defendant intentionally or knowingly possessed a controlled
substance, to-wit:  Cocaine, having an
aggregate weight, including any adulterants or dilutants of 400 grams or more. 

 

The language of the jury charge
tracked the language found in Tex.Health
& Safety Code Ann. '
481.112(a)(Vernon 2003).

In her brief, the
Appellant provides this Court with only conclusory statements to support her
contention, but fails to show the error or point to harm resulting from the
above charge.  Reviewing the charge in
its entirety, the charge limited the application of the term Adelivery@
to a meaning consistent with the charge put forth in the indictment.  We fail to see any error contained in the
jury charge.  Assuming arguendo
that the jury charge contained error, the Appellant has nevertheless failed to
meet her burden of showing actual harm requiring reversal.  See Abdnor, 871 S.W.2d at 732.  Finding that the jury charge contains no
error, we overrule Issue Three.

Having overruled
Appellant=s issues,
we affirm the trial court=s
judgment. 

 

 

May
31, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
ACuidado@
was the word the interpreter used to translate Aextensively@ into Spanish.





[2]
In her brief, the Appellant states:  AIt is apparent that the record reflects
that the very changing of the words did cause confusion to Counsel and likely
caused confusion to the jury, [sic] 
Therefore, a harm analysis requires reversal based on the factors of
confusion and interruption caused by the repeated objections by both Appellant=s and Appellee=s
counsel.  At this point, it became
incumbent upon the Court to make a determination under Art. 38.30 and
38.31.  None occurred and the abuse of
discretion did occur.@